# UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM CANDELARIA, | ) |
| | ) |
| Plaintiff, | ) Case No. _____ |
| | ) |
| v. | ) JURY TRIAL DEMANDED |
| | ) |
| ADESTO TECHNOLOGIES CORPORATION, | ) |
| NELSON CHAN, NARBEH DERHACOBIAN, | ) |
| HERVÉ FAGES, FRANCIS LEE, KEVIN | ) |
| PALATNIK, and SUSAN UTHAYAKUMAR, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff William Candelaria ("Plaintiff"), by his undersigned attorneys, for this Complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.   This is an action brought by Plaintiff against Adesto Technologies Corporation ("Adesto" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Adesto, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law. Plaintiff's claims arise in connection with the proposed acquisition of Adesto by Dialog

1

Semiconductor plc ("Parent") through Parent's wholly-owned subsidiary, Azara Acquisition Corp. ("Merger Sub") (the "Proposed Transaction").

2. On February 20, 2020, Adesto entered into an agreement and plan of merger (the "Merger Agreement"), pursuant to which Merger Sub will merge with and into Adesto, with Adesto surviving as the wholly owned subsidiary of Parent (the "Merger").

3. Upon consummation of the Merger, Adesto shareholder will be entitled to receive $12.55 in cash for each share of Adesto common stock they hold (the "Merger Consideration").

4. On March 16, 2020, in order to convince Adesto public common shareholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections for Adesto; and (ii) the valuation analyses performed by Adesto's financial advisor, Cowen and Company, LLC ("Cowen") regarding the Proposed Transaction.

6. The Proposed Transaction is expected to close in the third quarter of 2020, so the virtual special meeting of Adesto's shareholders to vote on the Proposed Transaction is imminent (the "Shareholder Vote"). Therefore, it is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote, so Adesto's shareholders can properly exercise their corporate voting rights.

7. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 and breach of the duty of candor/disclosure. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is

disclosed to Adesto's public common shareholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breach of the duty of candor/disclosure.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9. The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

10. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

11. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391 because Defendants are found or are inhabitants or transact business in this District. Indeed, Adesto's common stock trades on the Nasdaq Global Select Market ("NasdaqGS"), which is also headquartered in this District. *See, e.g., United States v.*

3

*Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). Further, the Company's proxy solicitor, D.F. King & Co., Inc. is located in this District at 48 Wall Street, NY, NY 10005.

## PARTIES

12. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Adesto common stock.

13. Defendant Adesto is a public company incorporated under the laws of Delaware with principal executive offices located at 3600 Peterson Way, Santa Clara, CA 95054. Adesto's common stock is traded on the NasdaqGS under the ticker symbol "IOTS."

14. Defendant Nelson Chan is, and has been at all relevant times, a director of the Company and Chairman of the Board.

15. Defendant Narbeh Derhacobian is, and has been at all relevant times, a director of the Company, Chief Executive Officer, and President.

16. Defendant Hervé Fages is, and has been at all relevant times, a director of the Company.

17. Defendant Francis Lee is, and has been at all relevant times, a director of the Company.

18. Defendant Kevin Palatnik is, and has been at all relevant times, a director of the Company.

19. Defendant Susan Uthayakumar is, and has been at all relevant times, a director of the Company.

20. The Defendants identified in paragraphs 14 through 19 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Adesto, the "Defendants."

//

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

21. Adesto is a provider of application-specific semiconductors and embedded systems. The Company's portfolio of semiconductor and embedded technologies are designed for connected Internet of things (IoT) devices used in industrial, consumer, communications and medical applications. Its product portfolio includes non-volatile memory devices, analog and mixed-signal application-specific integrated circuit (ASICs) and Internet protocol (IP) cores, standard communication and control chips for IoT edge, communication modules, gateways, and edge-servers.

22. On February 20, 2020, the Board caused the Company to enter into the Merger Agreement with Parent, whereby Adesto shareholders will be entitled to receive $12.55 in cash for each share of Adesto common stock held.

23. According to the February 20, 2020, press release announcing the Proposed Transaction:

**Dialog Semiconductor to Acquire Adesto Technologies, Broadening Presence in the Industrial Internet of Things Market (IIoT)**

*Adds differentiated cloud-connected solutions driving Industry 4.0 adoption*

*Diversifies customer base adding industrial sales channel*

*Expects to be EPS accretive in the first calendar year after close*

*Annual cost synergies of approximately $20 million expected, in addition to considerable revenue synergies*

> London, February 20, 2020 – Dialog Semiconductor plc (XETRA:DLG), a leading provider of power management, charging, AC/DC power conversion, Wi-Fi and Bluetooth® low energy technology, and Adesto Technologies Corporation ("Adesto") (NASDAQ:IOTS), a leading provider of innovative custom integrated circuits (ICs) and embedded systems for the Industrial Internet of Things (IIoT) market, today announced they have signed a definitive agreement for Dialog to acquire all outstanding shares of Adesto.

Adesto accelerates Dialog's expansion into the growing IIoT market that enables smart buildings and industrial automation (Industry 4.0), seamlessly driving cloud connectivity. Headquartered in Santa Clara, California, Adesto has approximately 270 employees and an established portfolio of industrial solutions for smart building automation that fully complements Dialog's manufacturing automation products. Adesto's solutions are sold across the industrial, consumer, medical, and communications markets.

"This acquisition substantially enhances our position in the Industrial IoT market," said Jalal Bagherli, CEO of Dialog. "Adesto's established strength in connectivity solutions and highly optimized products for building and industrial automation perfectly complements and adds scale to our Industrial IoT portfolio from the recently acquired Creative Chips. Adesto's deep customer relationships, comprehensive system expertise, and proprietary technology will deliver enhanced value for Dialog customers."

"Together with Dialog, we are positioned to create unique Industrial IoT solutions through the integration of our best-in-class technologies for today's increasingly connected world," added Adesto's CEO, Narbeh Derhacobian. "We are extremely pleased to join Dialog to bring more value to our combined customer base."

Benefits of Transaction

Bringing Dialog and Adesto together creates a complementary product portfolio for servicing a broad customer base in growth segments of the industrial market and enables cross-selling.

Transaction Structure and Terms

Dialog will acquire Adesto for $12.55 per share in cash, or for approximately $500 million enterprise value. The deal will be funded from Dialog's balance sheet.

The transaction is expected to be EPS accretive[1] for Dialog within the first calendar year following close. Dialog expects annual cost synergies of approximately $20 million within the first calendar year of close across the combined company. Dialog also anticipates considerable additional revenue synergies given the complementary nature of the product portfolios and technology. Adesto expects to report FY 2019 revenue of approximately $118 million and continued revenue growth is anticipated over the next few years.

The transaction is subject to certain regulatory approvals and customary closing conditions and is expected to close in the third quarter of 2020.

> The Board of Directors of Adesto has unanimously approved the transaction and recommends that Adesto stockholders vote in favor of the transaction, and directors and executive officers of Adesto have agreed to vote their shares in favor of the transaction.
>
> Hogan Lovells is serving as Dialog's legal counsel, while BMO Capital Markets is serving as financial advisor. Fenwick & West LLP is serving as legal counsel for Adesto, with Cowen & Company, LLC serving as financial advisor.

(Emphasis in original).

**The Proxy Omits Material Information**

24.  On March 16, 2020, Defendants filed a materially incomplete and misleading Proxy with the SEC. The Proposed Transaction is expected to close in the third quarter of 2020, so the Shareholder Vote is imminent. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

25.  First, the Proxy fails to provide enough information regarding the financial projections. In particular, the Proxy fails to disclose: (i) all line items underlying Adesto's unlevered free cash flow and Adjusted EBITDA; and (ii) a reconciliation of all non-GAAP to GAAP metrics. Second, the Proxy fails to disclose material information regarding Cowen's financial analyses conducted with respect to the Proposed Transaction.

26.  First, Defendants' failure to disclose all line items used to calculate the Company's unlevered free cash flow and Adjusted EBITDA, as well as Defendants' failure to disclose the reconciliation of all non-GAAP to GAAP metrics renders the Proxy materially misleading. Proxy, 55-56.

27. If a Proxy discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases). Accordingly, Defendants have disclosed some of the information related to the Company's projections relied upon by Cowen, but have omitted crucial line items and reconciliations. Thus, Defendants' omissions render the projections disclosed on pages 55-56 of the Proxy misleading.

28. Second, the Proxy omits material information regarding the financial analyses conducted by Cowen.

29. With respect to Cowen's *Analysis of Selected Publicly Traded Companies*, the Proxy fails to disclose the individual multiples observed for each of the selected companies. *Id.* at 47-48.

30. As for Cowen's *Analysis of Selected Transactions*, the Proxy omits the multiples observed for each of the 27 selected transactions. *Id.* at 48-51.

31. With respect to Cowen's *Discounted Cash Flow Analysis*, the Proxy is materially misleading and incomplete because it fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 13.5% to 15.5%; (ii) the discounted terminal value of Adesto; (iii) the inputs and assumptions underlying the range of perpetuity growth rates of 8.3% to 11.0%; (iv) the inputs and assumptions underlying the selected terminal multiples ranging from 10.0x to 12.0x; and (v) assumptions underlying selection of the discount rate of 15.3%. *Id.* at 51-52.

Moreover, Cowen's *Discounted Cash Flow Analysis* is based on unlevered free cash flow, yet the financial projections omit the line items used to calculate unlevered free cash flow. *Id.* at 55-56.

32.     These key inputs are material to Adesto's shareholders, and their omission renders the summary of Cowen's *Discounted Cash Flow Analysis* incomplete and misleading.  As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…"  *Id.*  As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**.* The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).  Without the above-mentioned information, the Company's shareholders cannot evaluate for themselves the reliability of Cowen's *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value ranges reflect the true value of Adesto or was the result of an unreasonable judgment by Cowen, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

33.     Defendants' failure to provide the foregoing material information renders the statements in the Proxy false and/or materially misleading.

9

34. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act and the Individual Defendants' duty of candor/disclosure. Absent disclosure of the foregoing material information prior to the upcoming Shareholder Vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote their shares in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

39.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the financial projections for the Company; and (ii) the valuation analyses performed by Cowen in support of its fairness opinion.

40.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

41.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Cowen reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by Cowen, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up

11

to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Cowen's analyses in connection with their receipt of the fairness opinions, question Cowen as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

42.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

43.     Adesto is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

44.     The misrepresentations and omissions in the Proxy are material and Plaintiff will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Adesto, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

49.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The

Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

**(Against the Individual Defendants for Breach of Their Fiduciary Duty of Candor/Disclosure)**

53. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

55. As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

56. The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

57. Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

//
//
//
//
//

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 25, 2020  **MONTEVERDE & ASSOCIATES PC**

By: */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*